# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TAYLOR H. DAVIN** | * | |
| 45630 Taras Court | * | |
| Great Mills, Maryland 20634 | * | |
| | * | |
| Plaintiff, | * | CASE NO: |
| | * | |
| v. | * | |
| | * | |
| **COMPASS SYSTEMS, INC.** | * | |
| 21471 Great Mills Road | * | |
| Lexington Park, Maryland 20653 | * | |
| | * | |
| <u>Serve on Resident Agent:</u> | * | COMPLAINT |
| George Uhall | * | |
| 20892 Chestnut Ridge Drive | * | |
| Lexington Park, Maryland 20653 | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff, Taylor H. Davin ("Mrs. Davin"), through her attorneys, Susan Stobbart Shapiro, Steven A. Brown, and Council, Baradel, Kosmerl & Nolan, P.A., files this, Complaint against Defendant, Compass Systems, Incorporated ("Defendant"), and in support thereof asserts the following:

### I. INTRODUCTION

1.  Mrs. Davin is a former employee of the Defendant, and she brings this action in order to recover damages resulting from Defendant willfully misclassifying her in an attempt to avoid paying overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL. §§ 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collections Law, MD. CODE ANN., LAB. &

EMPL. §§ 3-501, *et seq.* ("MWPCL"), for paying her less than men for work that required substantially equal work as prohibited under the Equal Pay Act, 29 U.S.C. § 206 (d)(1) ("EPA"), and Maryland Equal Pay Act, MD. CODE ANN., LAB. & EMPL. §§ 3-301, *et seq.* ("MEPA"), to recover damages for Defendant's tortious interference with her business relationships, and prevent future interference; and for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 ("FDJA").

## II. PARTIES, JURISDICTION, AND VENUE

2. Mrs. Davin is a resident of St. Mary's County, Maryland, and was a former employee of the Defendant.

3. Defendant is a business incorporated under the laws and regulations of the State of Maryland, and has its principal place of business in St. Mary's County, Maryland.

4. This Court has subject matter jurisdiction over questions involving the interpretation of the FLSA and the EPA pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Ms. Davin's DJA claims through its independent federal question jurisdiction related to the FLSA and the EPA. This Court also has jurisdiction over Mrs. Davin's MWHL, MWPCL, and MEPA claims pursuant 28 U.S.C. § 1367 because those state law claims arise from the same set of operative facts as the FLSA and the EPA claims over which this Court has original jurisdiction.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant's principal place of business is within this District, the events and omissions supporting this Complaint occurred within this District and Defendant is subject to personal jurisdiction in this District.

## III. STATEMENT OF FACTS

6. Defendant is a business that provides design engineering and manufacturing services for fixed and rotary wing aircraft contracts.

7. On December 30, 2013, Defendant hired Mrs. Davin as a proposal manager, initially paid on a salary basis.

8. On December 31, 2013, Mrs. Davin signed a document titled: Non-Disclosure Agreement and Covenant Not to Compete ("Restrictive Covenant") (Exhibit 1), which contains covenants not to compete, not to solicit, and not to recruit.

9. The covenant not to compete found in the Restrictive Covenant states the following:

> During the period of time EMPLOYEE is employed by COMPASS, under the terms of any employment contract or otherwise, and for a period of one (1) year thereafter, EMPLOYEE shall not directly or indirectly compete with COMPASS on any contract or sub-contract; nor shall EMPLOYEE solicit existing COMPASS customers for the purposes of obtaining business for themselves or any other incorporated or non-incorporated business entity. This provision is (a) subject to COMPASS's option to waive all or any portion of the one (1) year time period of non-competition following termination more specifically provided for in paragraph 2; and (b) subject to COMPASS's option to specifically identify, at the time of termination, those contracts or subcontracts, which EMPLOYEE may not pursue under the conditions of this Agreement and for the period of non-competition. COMPASS agrees to act in good faith in its exercise of the above-noted options.

10. The non-solicitation covenant found in the Restrictive Covenant states the following:

> EMPLOYEE shall not, during employment and for a period of one (1) year immediately following termination of this agreement, either directly or indirectly, call on solicit, or take away, or attempt to call on, solicit, or take away, any of COMPASS's customers or clients whom EMPLOYEE became acquainted with during the

period of this agreement, either for EMPLOYEE's own benefit, or for the benefit of any other person, firm, corporation or organization.

11. The non-recruit covenant found in the Restrictive Covenant states the following:

EMPLOYEE shall not, during the term of employment or for a period of one (1) year immediately following termination of this agreement, either directly or indirectly, recruit any of COMPASS's employees or independent contractors for the purpose of any outside business.

12. The Restrictive Covenant contains no geographical limitation, and purports to classify Defendant as a "worldwide company."

13. Regarding Mrs. Davin's initial position with the Defendant, Mrs. Davin had the title of proposal manager, a position that was designed to serve in an administrative support role to Defendant's proposal department.

14. Mrs. Davin's primary duties in her role as a proposal manager included establishing and maintaining files, preparing binders for the business development team, handling meeting logistics and taking meeting minutes, and ordering supplies. To perform her work she utilized Microsoft Word templates prepared by the Defendant.

15. Though the job description suggests that on "small proposal efforts" a proposal manager could have responsibility for management functions and answering standard calls, at no point during Mrs. Davin's role as a proposal manager did she exercise any management duties.

16. Further, Mrs. Davin had no supervisory authority or ability to influence the hiring or firing of any of Defendant's employees.

17. Ultimately, Mrs. Davin's role as a proposal manager was limited to conducting routine data search and entry work, organizing meetings, and other low level administrative tasks. She had no authority to negotiate on behalf of the Defendant nor could she commit the

Defendant to any particular matter whatsoever. In sum she had no authority to exercise independent judgement upon matters of significance.

18. At the start of April of 2014, Mrs. Davin was converted to hourly compensation. During this time she was paid at a rate of $37.50 per hour.

19. It was also during April of 2014 that Defendant attempted to "furlough" employees by forcing employees to take an unpaid day of leave each week. However, despite not paying her, Defendant still required Mrs. Davin to work off the clock on each furlough day.

20. In late mid-July of 2014, Defendant returned Mrs. Davin to a full on-the-clock workweek. In the corresponding pay period Mrs. Davin recorded similar hours to what she had been regularly working per pay period for the past several months, which equaled approximately 60 hours per week in each week of the pay period.

21. Shortly thereafter, in late-July of 2014, Defendant intentionally misclassified Mrs. Davin into a salary-based compensation structure in an attempt to avoid paying overtime. However, Defendant did not change her primary duties.

22. From December 30, 2013 through September 1, 2015, Mrs. Davin worked approximately 60 hours per week, but only received overtime pay in one pay period in mid-July of 2014.

23. At the end of August of 2015, Mrs. Davin received a merit raise raising her annual salary to $99,999.00.

24. Later on September 1, 2015, Ms. Davin was promoted to Director of Proposals and Deputy Director of Business Development. Her salary remained at the same level, despite being substantially less than other male employees in director-level positions.

25. In January of 2016, Mrs. Davin was promoted to Director of Business development and Proposals, again her salary remained the same. Defendant's CEO, Mark Pinekenstein, was quoted as saying about Mrs. Davin's promotion: "Taylor [Davin] brings proven leadership and management experience, and a remarkable level of business relations and knowledge".

26. The employee, a man, who performed substantially equal work in the same position of Director of Business Development immediately preceding Mrs. Davin was paid an annual salary of $156,000.00.

27. The employee, a man, who had Mrs. Davin's same position immediately preceding Mrs. Davin's predecessor was paid an annual salary of $145,000.00.

28. Two other directors of business development, men, who performed substantially the same business development work as Mrs. Davin, while she was working as a director of business development, were paid annual salaries of $130,000.00.

29. These two directors performed job duties that required the same skill, effort and responsibility in the field of business development and sales, and the directors performed under very similar working conditions as Mrs. Davin.

30. In addition to being paid between $30,000.00 and $46,000.00 less in pure salary than men, Mrs. Davin's overall compensation was also less than her male counterparts in that she did not receive shares in the Defendant's corporation, a company vehicle or company paid gas, or a director's bonus that her male predecessors and counterparts received.

31. On September 27, 2016, Mrs. Davin resigned from her position with Defendant.

32. Shortly thereafter, Defendant sent letters out to approximately 30 companies so as to prevent Mrs. Davin from obtaining new employment in the industry.

33. Defendant included a copy of the Restrictive Covenant with each letter and stated:

> I urge you to carefully review the enclosed agreements to ensure [recipient company] does not interfere with Compass's contractual rights or become a party to, or the beneficiary of, any improper conduct by Ms. Davin. Compass intends to diligently protect its rights and take all action necessary to ensure Ms. Davin fulfills her legal obligations to Compass.

34. Several of the companies who received these letters were companies to whom Mrs. Davin had in fact applied for employment.

35. The companies then contacted Mrs. Davin to tell her that they could not hire nor could they do business with her because they did not want to get involved with Defendant.

36. Specifically, one company's recruiter proactively reached out to Mrs. Davin to inquire about hiring her, but afterwards the company received a letter from Defendant and referenced the letter as its reasoning for discontinuing its pursuit of Mrs. Davin.

37. Defendant also called the company Mrs. Davin worked for prior to working for Defendant at least twice after she stopped working for the Defendant to interrogate that business owner regarding Mrs. Davin.

38. Despite this conduct by Defendant, Mrs. Davin was able to secure new employment in the industry; albeit at a substantially lower salary and responsibility level.

39. On October 11, 2016, Mrs. Davin began a new job with National Technologies Associates.

40. Mrs. Davin's new position requires her to work with some of the companies who have received the referenced letters. However, these companies have expressed an apprehension towards doing, and declined to do, business with Mrs. Davin, and by extension her new employer, due to uncertainty created by Defendant and the Restrictive Covenant.

41. On information and belief, Defendant also sent similar letters to government customers and officials whereby Defendant threatened litigation and protests against those government customers and officials if they entered into contracts with Mrs. Davin or any company that employed Mrs. Davin.

42. As a direct result of the improper letters sent out by the Defendant, the relevant government clients are declining to do business with Mrs. Davin's new employer while Mrs. Davin is still employed, and as such Mrs. Davin has been improperly prevented from doing any type of work this area.

### D. CAUSES OF ACTION

### Count I: Violation of the Fair Labor Standards Act

43. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

44. Mrs. Davin was non-exempt while working in the proposal manager role, as such Defendant was required to pay Mrs. Davin at a rate of one and a half times her regular rate of pay for all hours worked in excess of 40 hours per week.

45. Mrs. Davin worked approximately 60 hours per week from December 30, 2013 through September 1, 2015.

46. Defendant failed to pay overtime to Mrs. Davin in violation of the FLSA, in all but one pay period during this time period.

47. Defendant misclassified Mrs. Davin as exempt under the FLSA in a willful attempt to avoid paying overtime pay in violation of the FLSA.

48. Defendant failed to keep accurate records of the actual hours Mrs. Davin worked throughout her employment; specifically during the furlough period as alleged.

49. Defendant's actions as alleged herein constitute willful violations of the FLSA.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court enter judgment against Defendant and in Mrs. Davin's favor and:

a. Award an amount equal to the wages determined at trial due for the overtime pay due;

b. Award an equal amount in liquidated damages;

c. Award Mrs. Davin's reasonable attorneys' fees and costs; and

d. Award such other and further relief as the courts deems just and proper.

### **Count II: Violation of the Maryland Wage and Hour Law**

50. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

51. Mrs. Davin was non-exempt while working in the proposal manager role, as such Defendant was required to pay Mrs. Davin at a rate of one and a half times her regular rate of pay for all hours worked in excess of 40 hours per week.

52. Mrs. Davin worked approximately 60 hours per week from December 30, 2013 through September 1, 2015.

53. Defendant failed to pay overtime to Mrs. Davin in violation of the MWHL, in all but one pay period during this time period.

54. Defendant misclassified Mrs. Davin as exempt under the MWHL without a good faith basis for doing so as the conduct was a willful attempt to avoid paying overtime pay in violation of the MWHL.

55. Defendant failed to keep accurate records of the actual hours Mrs. Davin worked throughout her employment; specifically during the furlough period as alleged.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court enter judgment against Defendant and in Mrs. Davin's favor and:

a.  Award an amount of wages to be determined at trial equal to the difference between what was actually paid and the amount of wages and overtime that should have been paid;

b.  Award an additional amount in liquidated damages;

c.  Award reasonable attorneys' fees and costs to Mrs. Davin; and

d.  Award such other and further relief as the courts deems just and proper.

**Count III: Violation of the Maryland Wage Payment and Collections Law**

56. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

57. The amounts owed to Mrs. Davin by the Defendant for unpaid overtime and equal pay violations constitute "wage" under the MWPCL.

58. Mrs. Davin was non-exempt while working in the proposal manager role, as such Defendant was required to pay Mrs. Davin at a rate of one and a half times her regular rate of pay for all hours worked in excess of 40 hours per week.

59. Mrs. Davin worked approximately 60 hours per week from December 30, 2013 through September 1, 2015; however she was misclassified as salaried and never paid her overtime rate.

60. While employed by the Defendant, Mrs. Davin worked overtime hours that were not properly compensated by the Defendant as required by the MWHL which constitutes a violation of the MWPCL.

61. While employed by the Defendant, Mrs. Davin performed work that was substantially similar in comparison to her male counterparts in however she was not properly compensated by the Defendant as required by the MEPA, which constitutes a violation of the MWPCL.

62. Defendant's failure and refusal to comply with its obligations under the Maryland law and the MWPCL was not due to any bona fide dispute, and therefore was willful and not in good faith.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court enter judgment against Defendant and in Mrs. Davin's favor and:

a. Award an amount of wages to be determined at trial equal to the difference between what was actually paid and the amount that should have been paid;

b. Award an additional amount raising the total award to not more than three times the wages determined to be owed;

c. Award reasonable attorneys' fees and costs to Mrs. Davin; and

d. Award such other and further relief as the courts deems just and proper.

### Count IV: Violation of the Federal Equal Pay Act

65. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

66. Defendant employed Mrs. Davin and other male employees in director-level business development jobs requiring substantially equal skill, effort, and responsibility.

67. Mrs. Davin performed her director-level business development positions under similar working conditions as the male predecessors in the same position, as well as the male

counterparts working in director-level business development positions contemporaneously with Mrs. Davin.

68. Mrs. Davin was paid lower wages than the male employees doing substantially equal work in that these male employees received salary that was approximately $30,000.00 to $45,000.00 more than Mrs. Davin's salary, these male employees received shares of ownership in the company, these male employees received director's bonus, and these male employees received company vehicles and company paid gas.

69. Defendant's actions as alleged herein constitute willful violations of the EPA, and the Defendant has no reasonable grounds for believing that it could pay a woman less than her male predecessors or counterparts.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court enter judgment against Defendant and in Mrs. Davin's favor and:

a. Award an amount of damages to be determined at trial equal to amount of wages that compensates her for the difference between what she was paid (in both wages and benefits) and the average amount of what her male predecessors and counterparts were paid (in both wages and benefits);

b. Award an additional amount in liquidated damages;

c. Award reasonable attorneys' fees and costs to Mrs. Davin; and

d. Award such other and further relief as the courts deems just and proper.

### Count V: Violation of the Maryland Equal Pay Act

70. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

71. Defendant employed Mrs. Davin and other male employees in business development jobs requiring substantially equal skill, effort, and responsibility.

70. Defendant employed Mrs. Davin and other male employees in director-level business development jobs requiring substantially equal skill, effort, and responsibility.

71. Mrs. Davin performed her director-level business development positions under similar working conditions as the male predecessors in the same position, as well as the male counterparts working in director-level business development positions contemporaneously with Mrs. Davin.

72. Mrs. Davin was paid lower wages than the male employees doing substantially equal work in that these male employees received salary that was approximately $30,000.00 to $45,000.00 more than Mrs. Davin's salary, these male employees received shares of ownership in the company, these male employees received director's bonus, and these male employees received company vehicles and company paid gas.

73. Defendant knew or reasonably should have known that paying the only woman director substantially lower wages than the male directors violated the MEPA.

74. Defendant's actions as alleged herein constitute willful violations of the MEPA, and the Defendant has no reasonable grounds for believing that it could pay a woman less than her male predecessors or counterparts.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court enter judgment against Defendant and in Mrs. Davin's favor and:

a. Award an amount of damages to be determined at trial equal to amount of wages that compensates her for the difference between what she was paid (in both wages and benefits)

and the average amount of what her male predecessors and counterparts were paid (in both wages and benefits);

  b.  Award an additional amount in liquidated damages;

  c.  Award reasonable attorneys' fees and costs to Mrs. Davin; and

  d.  Award such other and further relief as the courts deems just and proper.

**<u>Count VI: Tortious Interference with a Business Relationship</u>**

75. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

76. Defendant intentionally and willfully canvased every conceivable corner of business and government contracting community in and around St. Mary's County, Maryland with letters including the invalid Restrictive Covenant that threaten litigation if the recipients employed or otherwise dealt in business with Mrs. Davin.

77. Defendant issued these letters to intimidate those in the relevant business community through unfounded threats of litigation. Such conduct was calculated to effectively blacklist Mrs. Davin in this community and prevent Mrs. Davin from finding comparable employment, or being effective in any employment she was able to find.

78. Defendant took this action solely to cause damage to Mrs. Davin, and was without right or justifiable cause in these efforts, as the Restrictive Covenant is invalid.

79. As a result of Defendant's conduct, Mrs. Davin suffered damages in the form of lost earnings, lower earnings potential, and a diminished professional reputation.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court enter judgment against Defendant and in Mrs. Davin's favor and:

a. Award her compensatory damages for the differential in wages and benefits she lost, is currently losing, and is reasonably calculated to lose as a result of Defendant's tortious conduct in an amount to be determined at trial;

b. Award punitive damages;

c. Award reasonable attorneys' fees and costs of this action to Mrs. Davin pursuant to paragraph 11 of the Restrictive Covenant;

d. Issue an Order granting Mrs. Davin temporary, preliminary, and permanent injunctions restraining and enjoining Defendant from any future efforts of formally or informally enforcing the non-competition, non-solicitation, and non-recruitment provisions found in the Restrictive Covenant; and

e. Award any other relief to which Mrs. Davin may be properly and justly entitled.

## Count VI: Declaratory Judgment

80. Mrs. Davin incorporates each of the preceding paragraphs herein, as if each paragraph was specifically reasserted, and furthermore states:

81. Mrs. Davin and Defendant are parties to a contract (the Restrictive Covenant) and contest the rights and obligations that arise from that contract.

82. Mrs. Davin claims that the Restrictive Covenant is not valid under Maryland law, while Defendant has proactively gone out into the relevant business community and asserted that the Restrictive Covenant is valid.

83. There exists an actual controversy of a justiciable issue between Mrs. Davin and Defendant within the jurisdiction of this Court, involving the rights and liabilities of the parties.

84. Antagonistic claims are present between the parties. Mrs. Davin takes the position that the Restrictive Covenant, specifically the provisions referenced herein, are not

reasonably tailored to protect Defendant's legally protectable interests, and are thus facially overbroad and unenforceable.

85. Defendant obviously takes the position that the Restrictive Covenant is enforceable as drafted, and that it should be able to enjoin Mrs. Davin from directly or indirectly doing anything Defendant does or may want to do anywhere Defendant feels like doing it

86. Mrs. Davin seeks a judgment declaring that the Restrictive Covenant is invalid as alleged herein.

WHEREFORE, Mrs. Davin respectfully requests that this Honorable Court:

a. Enter judgment against the Defendant declaring that the non-competition, non-solicitation, and non-recruitment provisions found in the Restrictive Covenant are facial overbroad, not subject to any "blue penciling," and are thus unenforceable as a whole;

b. Award reasonable attorneys' fees and costs of this action to Mrs. Davin pursuant to paragraph 11 of the Restrictive Covenant; and

c. Award Mrs. Davin such other and further relief as in law and justice it may be entitled to receive.

Respectfully requested,

/s/ *Susan Stobbart Shapiro*
Susan Stobbart Shapiro, Esquire, #25072
Steven A. Brown, Esquire, # 18994
Council, Baradel, Kosmerl & Nolan, P.A.
125 West Street, Fourth Floor
Annapolis, Maryland 21401
Ph:   (410) 268-6600
Fax:  (410) 269-8409
Shapiro@councilbaradel.com
Brown@councilbaradel.com

***Attorneys for the Plaintiff***

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, Mrs. Davin, hereby demands a jury trial on all issues so triable.

/s/ *Susan Stobbart Shapiro* \
Susan Stobbart Shapiro